UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTOINE HARRIS, *et al*,

             Plaintiffs,

v.

DENISE GERTH, *et al*,

             Defendants.

_____/

Case No. 08-12374

Robert H. Cleland
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION
TO DISMISS, SEVER, AND TRANSFER CLAIMS**

## I.     PROCEDURAL HISTORY

This is a prisoner civil rights action filed under 42 U.S.C. § 1983 by

multiple plaintiffs who are in the custody of the Michigan Department of

Corrections (MDOC).  (Dkt.1).  At the time they filed the complaint, plaintiffs did

not pay the filing fee nor did they file any applications to proceed *in forma*

*pauperis* as required by 28 U.S.C. § 1915(a).  On June 19, 2008, pursuant to 28

U.S.C. § 1915(a) District Judge Robert H. Cleland issued an order allowing 30

days for each plaintiff to file a motion to proceed *in forma pauperis*.  (Dkt. 4)

(June 19, 2008 Order).  On August 6, 2008, Judge Cleland issued an order

dismissing certain plaintiffs for failing to comply with the June 19, 2008 Order

and granting *in forma pauperis* status to those who complied.  (Dkt. 36) (August 6, 2008 Order).[1]  Under Judge Cleland's August 6, 2008 Order, the following plaintiffs were not dismissed:  Antoine Harris, Eugene Humbert, Tyrone Jackson, Jeremy Mosely, Stephanel Adams, Jeffrey Carney, Andre Coleman, Darren Patton, Andy Anderson, Edward Hairston, Serrell Butts, James Lindsey, Jeffery Buhovecky, Leon Percival, Julius Bannerman, Randolph Reed, Usamah Carswell, William Echols, William Little, Curtis Fuller, Johnny Jackson, and Lorenzo Anthony.  On August 14, 2008, this case was referred to the undersigned for all pretrial proceedings.  (Dkt. 40).  Pursuant to their motions for reconsideration, plaintiffs DeLauren Gordon and Lee Massey were granted *in forma pauperis* status, and have been reinstated as plaintiffs.  (Dkt. 119, 120).  Thus, 24 plaintiffs remain in this action.[2]

---

[1] Plaintiffs Percival and Buhovecky did not apply for *in forma pauperis* status and also remain as plaintiffs in this case.

[2] Currently pending before the Court is plaintiffs' "motion to extend," which is essentially, a motion to amend the complaint.  (Dkt. 41).  Even a cursory review of plaintiffs' motion to amend illustrates the difficulties presented in managing a case with 24 prisoner-plaintiffs, each asserting a variety of unrelated claims.  It could take months for plaintiffs to even prepare and submit a proposed amended complaint in accordance with Local Rule 15.1, that is properly signed by all plaintiffs, for the Court's consideration.  Should this Report and Recommendation be adopted, the undersigned suggests that plaintiffs' "motion to extend" will be moot.  This motion, and all other unresolved motions in this matter, will be held in abeyance pending the disposition of this Report and Recommendation.

After careful review and examination of plaintiffs' 81 page complaint in this matter, the undersigned concludes that certain claims should be dismissed and that plaintiffs' complaint does not satisfy Federal Rules of Civil Procedure 18 and 20, and therefore, the parties and claims should be severed as outlined below.

## II.  DISCUSSION

### A.  Standard of Review

#### 1.  *Severance*

Federal Rule of Civil Procedure 21 provides that, when misjoinder occurs, "parties may be dropped or added by order of the court on motion of any party or its own initiative at any stage of the action and on such terms as are just.  Any claim against a party may be severed and proceeded with separately." *Nali v. Michigan Dep't of Corrections*, 2007 WL 4465247, *3 (E.D. Mich. 2007); *see also Arista Records, LLC v. Does 1-9*, 2008 WL 2982265 (S.D. Ohio 2008) (The Court may *sua sponte* sever claims and parties.); *Sires v. Eli Lilly & Co.*, 2005 WL 1239636 (E.D. Ky. 2005) (same); *Cosgrove v. Rios*, 2008 WL 4410153 (E.D. Ky. 2008) (The Court may sever claims *sua sponte*, which results in the creation of separate actions); *Globe American Cas. Co. v. Davis*, 2008 WL 586419 (E.D. Tenn. 2008) (same).

As this Court has observed, under Rule 21, it has broad discretion "to order

a severance to avoid causing unreasonable prejudice and expense to the defendant ... and to avoid great inconvenience in the administration of justice." *Nali*, at *3. Similarly, the Western District of Kentucky observed that Rule 21 gives the Court "discretion to ... add parties, drop (dismiss) parties, and may sever [a]ny claim against a party." *Jones v. Pancake*, 2007 WL 4104568 (W.D. Ky. 2007), quoting, 4-21 Moore's Federal Practice-Civil § 21.02 (internal quotation omitted); *see also*, Moore's Federal Practice-Civil § 21.06 ("Severance under Rule 21 results in separate actions."). Further, "[a]s with any case in federal court, [the severed action] may be transferred under appropriate circumstances.... Indeed, the fact that a claim might be subject to transfer to a more appropriate venue is a valid reason to order severance." *Id.*

### 2. *Dismissal*

To state a claim on which relief may be granted, a plaintiff must comply with Federal Rule of Civil Procedure Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955, 1964 (2007), quoting, *Conley v. Gibson*, 355 U.S. 41, 47 (1957). And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations

must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 127 S.Ct. at 1965 (internal citation and quotation marks omitted). While a *pro se* complaint must be read indulgently by the Court, under the notice pleading standard, the complaint must still give the defendant fair notice of what the claim is and the grounds on which it rests. *Erickson v. Pardus*, — U.S. —, 127 S.Ct. 2197 (2007).

B.    Rules for Proper Joinder of Claims and Parties

Rule 20(a) limits the joinder of parties, and Rule 18(a) limits the joinder of claims. Fed.R.Civ.P. 18(a), 20(a). Rule 20(a)(2) governs when *multiple defendants* may be joined in one action: "[p]ersons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed.R.Civ.P. 20(a)(2)(A) and (B). Rule 20(a)(1) governs when *multiple plaintiffs* may bring a joint action: "Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Rule

18(a) provides: "A party asserting a claim ... may join, as independent or alternative claims, as many claims as it has against an opposing party."

Fed.R.Civ.P. 18(a).

Where multiple parties are named, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18...
>
> **Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all** ...

*Garcia v. Munoz*, 2008 WL 2064476, *3 (D. N.J. 2008) (emphasis added), quoting, Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, 7 Federal Practice & Procedure Civil 3d, § 1655; *see also Ross v. Meagan*, 638 F.2d 646, 650 n. 5 (3d Cir. 1981), overruled on other grounds, *Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Accordingly, "a civil plaintiff may not name more than one defendant in his

original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Garcia*, at *3; *see also Nali v. Michigan Dep't of Corrections*, 2007 WL 4465247 (E.D. Mich. 2007), citing, *Crutcher v. Commonwealth of Kentucky*, 1992 WL 98020, *3 (6th Cir. 1992) (For a plaintiff's claims against multiple defendants to be properly joined, they must satisfy both requirements set forth in Rule 20(a): (1) there must be a right to relief arising out of the same transaction or occurrence, and (2) there must be a question of law or fact common to all defendants.). Courts may consider many different factors when considering whether civil rights claims arise from the same transaction or occurrence, including, "the time period during which the alleged acts occurred; whether the acts of ... are related; whether more than one act ... is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Nali*, at *3, citing, *Brown v. Worthington Steel, Inc.*, 211 F.R.D. 320, 323-325 (S.D. Ohio 2002).

This same two-prong test applies when multiple plaintiffs are involved. For example, in *Coughlin v. Rogers*, 130 F.3d 1348 (9th Cir. 1997), the court addressed whether a single complaint by 50-plus plaintiffs asserting mandamus relief against the Department of Immigration and Naturalization was appropriate

based on the allegations that the defendants unreasonably delayed adjudicating the plaintiffs' applications and petitions. The Ninth Circuit concluded that the plaintiffs failed to satisfy both prongs of the Rule 20(a) test. *Id*. at 1350. The court noted that the first prong – "same transaction" requirement – refers to "similarity in the factual background of a claim." *Id.* While the "basic connection among all the claims is the alleged procedural problem of delay," the court concluded that the "mere allegation of general delay is not enough to create a common transaction or occurrence." *Id.* Given that each plaintiff "waited a different length of time, suffering a different duration of alleged delay," that "the delay is disputed in some instances and varies from case to case," and that "there may be numerous reasons for the alleged delay," the claims did not sufficiently create a common transaction or occurrence. *Id.*, citing, *Harris v. Spellman*, 150 F.R.D. 130, 132 (N.D. Ill. 1993) (allegedly similar procedural errors do not convert independent prison disciplinary hearings into same series of transactions or occurrences when hearings involved different incidents of purported misconduct raising different issues of law.).

As the Seventh Circuit recently explained, a prisoner may not join in one case all defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but
> Claim A against Defendant 1 should not be joined with
> unrelated Claim B against Defendant 2. Unrelated claims
> against different defendants belong in different suits, not
> only to prevent the sort of morass that [a multi]-claim,
> [multi]-defendant suit produced but also to ensure that
> prisoners pay the required filing fees-for the Prison
> Litigation Reform Act limits to 3 the number of frivolous
> suits or appeals that any prisoner may file without
> prepayment of the required fees. 28 U.S.C. § 1915(g)...
>
> A buckshot complaint that would be rejected if filed by a
> free person-say, a suit complaining that A defrauded the
> plaintiff, B defamed him, C punched him, D failed to pay
> a debt, and E infringed his copyright, all in different
> transactions-should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also*, *Garcia*, at *3*;

*Bolling v. Hayman*, 2008 WL 3843515, *2 (D. N.J. 2008).

In *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966), the

Supreme Court held that "[u]nder the Rules, the impulse is toward entertaining the

broadest possible scope of action consistent with fairness to the parties; joinder of

claims, parties and remedies is strongly encouraged." Consistent with this policy,

the requirements prescribed by Rule 20(a) are to be liberally construed in the

interest of convenience and judicial economy. *Swan v. Ray*, 293 F.3d 1252,1253

(11th Cir. 2002). However, as the New Jersey District Court recently observed,

"the policy of liberal application of Rule 20 is not a license to join unrelated

claims and defendants in one lawsuit." *Boretsky v. Corzine*, 2008 WL 2512916, *4 (D. N.J. 2008), citing, *Pruden v. SCI Camp Hill*, 252 Fed.Appx. 436 (3d Cir. 2007); *George v. Smith*, 507 F.3d 605 (7th Cir. 2007); *Coughlin, supra*. And, Rule 20 does not authorize a plaintiff to "incorporate into an existing action a different action against different parties and presenting entirely different factual and legal issues." *Lovelace v. Lee*, 2007 WL 3069660, *1 (W.D. Va. 2007), quoting, *Trail Realty Inc. v. Beckett*, 462 F.2d 396, 399-400 (10th Cir. 1972).

The New Jersey District Court also discussed the pervasive impracticalities associated with multiple-plaintiff prisoner litigation, which militates against permissive joinder even if it were otherwise allowed by Rule 20(a). *Boretsky*, at *5. Among the difficulties noted are the "need for each plaintiff to sign every pleading, and the consequent possibilities that documents may be changed as they are circulated, or that prisoners may seek to compel prison authorities to permit them to gather to discuss the joint litigation." *Id.* A Wisconsin federal court also found that permitting multiple prisoner-plaintiffs to proceed in a single action invites violations of Rule 11(a), which requires every pleading to be signed by all *pro se* plaintiffs. *Ghashiyah v. Frank*, 2008 WL 680203, *1 (E.D. Wis. 2008). Moreover, it often results in pleadings being filed on behalf of plaintiffs without their consent. *Id.*

Some courts have also noted that "jail populations are notably transitory, making joint litigation difficult."  *Boretsky*, at *5, citing, *White v. Tennessee Bd. of Probation and Paroles*, 2007 WL 1309402 (W.D. Tenn. 2007) ("[I]t is administratively impractical to permit five inmates at three institutions to litigate their claims in a single action").  Other District Courts have also pointed to the "need for resolution of individualized questions of fact and law surrounding the requirement for exhaustion of administrative remedies under 42 U.S.C. § 1997e(a)."  *Boretsky*, at *6, citing, *Worthen v. Oklahoma Dept. of Corrections*, 2007 WL 4563665  (W.D. Okla. 2007) (Report and Recommendation), Report and Recommendation Adopted in pertinent part, 2007 WL 4563644 (W.D. Okla. 2007); *Lilly v. Ozmint*, 2007 WL 2022190 (D. S.C. 2007).

The *Boretsky* court found the reasoning of these other District Courts to be persuasive, noting that prisoners are "not in the same situation as non-prisoner joint plaintiffs; prisoners' circumstances make joint litigation exceptionally difficult."  *Boretsky*, at *6.  The court concluded, however, that it would "not be just to dismiss this case in its entirety merely because the co-plaintiffs' claims may not be joined."  *Id*.  Instead, pursuant to Rule 21, the court dismissed all plaintiffs except the first named plaintiff, and directed the Clerk of the Court to open a separate case for each dismissed plaintiff, docketing the original complaint and the

court's opinion and order in all the newly severed cases.  Each plaintiff was also granted leave to file an amended complaint asserting his individual claims.  *Id*.

This Court has addressed similar circumstances, finding severance appropriate.  For example, in *Nali*, the plaintiff-prisoner alleged discriminatory acts at three different correctional facilities within two districts.  *Id*. at 3. Magistrate Judge Donald A. Scheer concluded that, because the claims in the complaint were factually separable, took place in different time periods, alleged that different defendants violated the plaintiff's civil rights in separate ways, and occurred in differing geographic locations, permissive joinder was not proper.  *Id*. Magistrate Judge Scheer recommended that the claims against the defendants who worked at prisons located in the Western District be severed and transferred, which recommendation was adopted by the District Court.  *Id*.; *see also Fitts v. Burt*, 2008 WL 878532, *4-5 (E.D. Mich. 2008) (Prisoner-plaintiff's claims against defendants who reside in Western District, where the claims arose, were severed from the claims against the defendants who reside in the Eastern District, and transferred.).

Based on these principles, the undersigned recommends that the Court dismiss certain claims and sever others, as set forth in detail below.

C.    Recommended Dismissal and Severance of Parties and Claims

### 1.    *Mail delivery and processing and access to courts*

All plaintiffs appear to have brought mail delivery and processing and access to courts claims against various groupings of defendants.  All plaintiffs with mail claims and access to courts claims include Caruso and Bergh as defendants based on a "failure-to-train" claim.  (Dkt. 1, pp. 7-8).  Plaintiff Percival brings a host of specific mail and access to court claims and identifies related grievance numbers.  (Dkt. 1, pp. 8).  His claims, as identified on pages 8-10 of the complaint, appear to be unrelated to any other plaintiff's claims.  Plaintiffs Percival and Harris both make a claim regarding what appears to be another joint lawsuit (not in this Court) – that prison mail procedures caused their summons to expire and they were prevented from accessing the courts.  (Dkt. 1, p. 10, ¶ 75).

All plaintiffs assert general claims about the MDOC policies that prohibit prisoners from possessing more than 30 metered envelopes and from purchasing more than 20 envelopes at a time and the resulting cost issues.  (Dkt. 1, pp. 10-13).  Plaintiffs also complain about the MDOC policy limiting the amount of stationary they can possess and the high cost of such supplies.  (Dkt. 1, p. 12).  It is unclear which specific defendants these claims are brought against, other than defendants Bergh and Caruso.  These generic "policy" based claims also appear related to

specific plaintiffs or groups of plaintiffs asserting particular mail, personal

property, or access to courts claims. For example, plaintiffs Percival, Coleman,

Carney, and Fuller say that, as a result of the "mail delivery" issues and policies,

some of their claims were dismissed in Case No. 06-12485, pending before

District Judge Patrick Duggan. (Dkt. 1, pp. 11-12).[3]

Permitting all of these claims to go forward as a group would be, at best,

unwieldy and impossible to manage, given the exhaustion issues relating to each

claim (of which each plaintiff appears to have several), and, more importantly, the

varied proofs and defendants that will be associated with each separate claimed

instance of denial of access to the courts, improper mail delivery, and the

associated confiscation of personal property.

Based on the foregoing, the undersigned recommends that all plaintiffs mail

delivery and processing claims be severed from those asserted by Antoine Harris,

---

[3] Based on the analysis set forth herein, it is possible that the claims asserted by the group of plaintiffs that arises from the matter pending before Judge Duggan should be carved out separately, and placed in an additional severed case, separate from any other claims asserted by these plaintiffs, including those claims relating to mail delivery and processing and access to courts. Should the District Court conclude that this is the proper course of action, the undersigned suggests severing these claims into a single suit brought by plaintiffs Percival, Coleman, Carney, and Fuller, and that this group of claims be excluded from those set forth on Appendix A. *See* Appendix E.

the lead plaintiff. Thus, the undersigned **RECOMMENDS** that the District Court grant the following relief on the mail processing and delivery claims and access to court claims:

(a)     Plaintiff Harris has 30 days from entry of the order adopting this Report and Recommendation to file an amended complaint in this case (08-12374), asserting only his mail delivery and processing claims and access to court claims. After plaintiff Harris files his amended complaint, asserting only his mail delivery and processing claims and access to court claims, the Court will then undertake an analysis as to whether venue is proper in the Eastern District of Michigan.

(b)     The Clerk of the Court will assign new case numbers for each of the 23 other remaining plaintiffs, in which this Report and Recommendation, and any Order adopting it, will be docketed.[4] Each of the 23 remaining plaintiffs will have 30 days from the date his new case is opened to file an amended complaint, with the new case number on it, asserting only his mail delivery and processing claims and access to court claims. After each plaintiff has filed his amended complaint, asserting only his mail delivery and processing claims and access to court claims,

---

[4] Additionally, the Clerk of the Court should docket the items from the lead case in the new mail delivery and access to court cases as set forth on Appendix A.

the Court will then undertake an analysis as to whether venue is proper in the Eastern District of Michigan, for each new case. Any plaintiff who fails to timely file an amended complaint with the proper new case number on it, asserting only his mail delivery and processing claims and access to court claims, will have his mail delivery and processing claims and access to court claims dismissed.

### 2. *Conspiracy and Prisoner Legal Services of Michigan claims*

Plaintiffs assert claims against Prison Legal Services of Michigan, Inc. (PLSM) and its director, Sandra Girard, who represented the prisoners in the *Cain v. MDOC* state court class action suit. (Dkt. 1, pp. 47-52). The *Cain v. MDOC* state court class action settlement involved MDOC policies pertaining to prisoners' access to the courts, personal property rights, and classification and placement of prisoners. *King v. Zamiara*, 150 Fed.Appx. 485, 487 n. 2 (6th Cir. 2005). Plaintiffs claim that PLSM and Girard operated under a conflict of interest when they negotiated an "unenforceable settlement agreement," in a state court proceeding, so that they could maintain their financial relationship with the MDOC. (Dkt. 1, pp. 47-52). According to plaintiffs, PLSM and Girard now are engaged in a "conspiracy" with respect to their legal mail claims. *Id*.

The 2003 MDOC Annual Report provides background information on the state court proceeding and settlement to which plaintiffs refer in their complaint in

this case:

> In April, 1988, seven male prisoners filed a class action lawsuit which was assigned to Judge James Giddings in the Ingham County Circuit Court. The case centered on the control of the type and amount of property inmates are permitted, prisoners' access to courts, and the prisoner classification system. In September, 1988, female prisoners were allowed to intervene, which resulted in additional issues. The case proceeded for the next eight years with the prisoners representing themselves and with no resolution of any of the actual claims in the case.
>
> In August, 1996, the Michigan Supreme Court issued an order calling for swift resolution of the case and ordered the trial court to investigate the advisability of appointing special counsel to represent the class of male prisoners; Prison Legal Services of Michigan (PLSM) was appointed with an office located inside the prison. Judge Giddings then held trial in the Cain case from April through December of 1997 and ultimately issued orders which resolved the property claims. No other claims were resolved.
>
> When the Department converted the Egeler facility, where the PLSM office and prisoners were located, to the Reception Center, the Attorney General's Office filed a motion with the trial court asking that PLSM be required to vacate any office within the Department. This was denied by Judge Giddings and the Attorney General's Office appealed. On December 27, 2002 the Court of Appeals issued an opinion and order requiring PLSM to move out of the Egeler facility. The Court ruled resoundingly in the Department's favor and upheld their previous requirement that the PLSM office and all 12 of the workers could be removed from Egeler. Subsequent

to this ruling, PLSM filed motions with the trial court,
the appeals court, and the Supreme Court. On March 19,
2003 the Supreme Court ruled that Prison Legal Services
of Michigan had to vacate their office within the Egeler
facility and that the trial court had to ensure that the Cain
case was brought to final Judgment by November 1,
2003.

Judge Giddings ordered the parties to negotiate with
retired Judge Michael Harrison and after many months of
negotiations, the parties approved a settlement. On
November 6, 2003, the court entered four stipulations
approving settlement agreements in the Cain case. The
agreements covered access to courts, prisoner security
classification, typewriters, and miscellaneous issues.
This action ended the court's involvement in the
15-year-old case. The plaintiffs' counsel will continue to
monitor compliance with the settlement until November
of 2005 but the court's jurisdiction has ended.

See http://www.michigan.gov/documents/2003_Annual_Report_117583_7.pdf,

pp. 22-23.  With respect to the state court proceeding and settlement, plaintiffs

appear to make three related different claims: (1) the settlement agreement was

improper; (2) defendants Girard and PLSM wrongfully failed to do anything after

November 2005, when the court-ordered monitoring of compliance by Girard and

PLSM ended; and (3) defendants Girard and PLSM are engaged in a "conspiracy"

with prison officials throughout the state regarding plaintiffs' legal mail and

personal property claims.

　　　This Court does not have jurisdiction over plaintiffs' claims against PLSM

and Girard because they seek review of the state court proceedings in *Cain v. MDOC*, which is barred by the *Rooker-Feldman*[5] doctrine. The *Rooker-Feldman* doctrine bars federal courts, other than the United States Supreme Court, from exercising "appellate jurisdiction over the decisions and/or proceedings of state courts, including claims that are 'inextricably intertwined' with issues decided in state court proceedings." *Executive Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004) (citations omitted); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (The *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments ... and inviting district court review and rejection of those judgments.").[6]  Plaintiffs ask this Court to declare that the court-approved settlement agreement in *Cain v. MDOC* was improper and that defendants PLSM

_____

[5] The *Rooker-Feldman* doctrine is named for *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[6] Subject matter jurisdiction can and should be raised by the court *sua sponte*.  *See Kontrick v. Ryan*, 540 U.S. 443, 455 (2004), citing, *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884) (challenge to a federal court's subject-matter jurisdiction may be made at any stage of the proceedings, and the court should raise the question *sua sponte*); *Fed.R.Civ.P. 12(h)(3)* ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

and Girard acted inappropriately in that case. This Court would necessarily become inappropriately "inextricably" entwined with that state court case. This is not permitted under *Rooker-Feldman* and the Court should dismiss these claims for want of jurisdiction.

Through their conspiracy claim, plaintiffs seemingly attempt to tie their claims against PLSM and Girard to the actions of various corrections personnel as it pertains to legal mail, access to courts, and related personal property issues. The undersigned suggests that plaintiffs' conspiracy claim cannot be used to circumvent the *Rooker-Feldman* doctrine. As this Court held long ago, the "broad language of the Rules of Civil Procedure on joinder of claims and remedies, as well as parties, Rules 18 and 20, is limited by Rule 82 providing that the Rules of Civil Procedure shall not be construed to extend or limit the jurisdiction of the district courts or the venue of actions therein." *Square D Co. v. United Elec., Radio and Mach. Workers of America*, 123 F.Supp. 776, 782 (E.D. Mich. 1954); *see also U.S. ex rel. Fry v. Guidant Corp.*, 2006 WL 1102397 (M.D. Tenn. 2006) (same). Thus, the undersigned suggests that plaintiffs' conspiracy claim cannot save the proper dismissal of all claims brought against defendants PLSM and Girard for want of jurisdiction under the *Rooker-Feldman* doctrine.

To the extent that plaintiffs raise any other state law claims against

defendants PLSM and Girard, the undersigned suggests that this Court decline to exercise supplemental jurisdiction over such state law claims given that all federal claims against these defendants will be dismissed. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.").

Based on the foregoing, the undersigned **RECOMMENDS** that the Court **DISMISS** all claims by all plaintiffs against defendants Girard and PLSM.

### 3. *Mattress scheme claims*

All plaintiffs claim that they have been, or are at risk of being, falsely accused of "misuse" of their mattresses, and subject to seizure of their mattresses without due process. (Dkt. 1, p. 54). Several plaintiffs also claim that their mattresses have been confiscated for weeks or months based on alleged "misuse." *Id.* Plaintiffs further claim that defendants Caruso and Stapleton had knowledge and gave approval to defendants' Bergh, Rapelje, Maki, and "MDOC Staff throughout the State" to punish and unlawfully convert funds from prisoners by approving the confiscation of mattresses based on false allegations, without

conducting a hearing. (Dkt. 1, pp. 52-54).

This is precisely the type of situation contemplated by *Coughlin, supra.*
Each plaintiff may have a similar claim – the confiscation of a mattress – but the
prison personnel involved, the reasons for the confiscation, the duration of the
confiscation, the administrative review and/or grievance process, will be fact-
intensive and specific to each plaintiff. The mattress scheme claims simply do not
satisfy the transaction and occurrence test of Rule 20, just as in *Coughlin*. Thus,
based on the foregoing, the undersigned **RECOMMENDS** that the following
relief be granted:

(a)     The Clerk of the Court will open new case numbers for each of the 24
remaining plaintiffs, in which this Report and Recommendation, and any Order
adopting it will be docketed.[7] Each of the 24 remaining plaintiffs will have 30
days from the date of his new case is opened to file an amended complaint, with
the new case number on it, asserting only his mattress scheme claim. After each
plaintiff has filed his amended complaint, asserting only his mattress scheme
claim, the Court will then undertake an analysis to whether venue is proper in the
Eastern District of Michigan, for each new case. Any plaintiff who fails to timely

---

[7] Additionally, the Clerk of the Court should docket the items from the lead
case in the mattress scheme cases as set forth on Appendix B.

file an amended complaint with the proper new case number on it, asserting only his mattress scheme claim, will have his mattress scheme claim dismissed.

### 4. *Unconstitutionally vague disciplinary rules*

Plaintiffs raise a host of vague claims regarding the application of various MDOC disciplinary policies and additional or inconsistent "rules" imposed on them by prison personnel. (Dkt. 1, pp. 55-59). Plaintiff Percival, however, is the only plaintiff who asserts any specific claim. For example, he asserts that MDOC policy states that if a prisoner tampers with or misuses property valued over $10, it is considered "major" misconduct. Plaintiff Percival claims he was improperly given a "major" misconduct ticket for placing two envelopes on a light. According to plaintiff Percival, the hearing officer concluded that his actions could constitute "major misconduct" because the light was valued over $10. According to plaintiffs, prison officials are permitted to make "whimsical" decisions and prisoners have no notice about what is major or minor misconduct or what is misconduct at all. *Id*. at 58-59.

These claims are even more like those at issue in *Coughlin* than the mattress scheme claims. The conduct for each claimed wrongful application of MDOC policy or creation of arbitrary additional "rules" will be so fact-specific that it would be impossible for plaintiffs to satisfy the transaction or occurrence test in

Rule 20, even if there was a common issue of law or fact (which also seems highly unlikely in these circumstances).

As set forth above, only plaintiff Percival asserts a claim with any specificity. The remaining plaintiffs' claims are limited to vague assertions regarding "whimsical" application of rules and no specific incidents are identified. Even reading plaintiffs' *pro se* complaint indulgently, no plaintiff except plaintiff Percival has cited any facts whatsoever to support a claim of unconstitutional application of prison rules or has supplied the requisite notice required by Rule 8(a). The undersigned, therefore, recommends that plaintiff Percival's claim be severed and the remaining claims in this category be dismissed.

The undersigned further suggests that, once severed, plaintiff Percival's claim does not properly lie in Eastern District of Michigan. Venue in a federal question case lies in the district in which any defendants reside or in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b).[8] Public officials "reside" in the county in which they serve for purposes of venue in a suit challenging official acts. *Wichert v. Caruso*, 2007 WL

---

[8] It is well established that the transfer of venue is a matter with the sound discretion of a district court. *Norwood v. Kirkpatrick*, 349 U.S. 29, 31-33 (1955). A motion for transfer of venue is not required, and the court may enter an order *sua sponte*. *Carver v. Knox County, Tenn.*, 887 F.2d 1287, 1291 (6th Cir. 1989).

2904053, *3 (W.D. Mich. 2007), citing, *Butterworth v. Hill*, 114 U.S. 128, 132 (1885), and *O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir.), cert. denied, 411 U.S. 964 (1973). In the instant case, according to the complaint, plaintiff Percival asserts this claim against defendants Stapleton, Caruso, Bergh, and Maki, all of whom "reside" in either Lansing, Michigan, which lies in Ingham County, or in Munising, Michigan, which lies in Alger County. In addition, plaintiff Percival's allegations against these defendants arose in Ingham County and Alger County, where these defendants allegedly committed the acts giving rise to his claims. *Wichert*, at *3, citing, *Leroy v. Great Western United Corp.*, 443 U.S. 173, 185-87 (1979). Both Ingham County and Alger County are located in the Western District of Michigan. 28 U.S.C. § 102(b). In these circumstances, venue is proper only in the Western District. Consequently, the undersigned recommends that, if the District Court severs plaintiff Percival's unconstitutional disciplinary rules claim, the new case be transferred to the Western District, pursuant to 28 U.S.C. § 1406, where venue is proper.

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court, grant the following relief:

(a)     Plaintiff Percival's claims regarding any unconstitutionally vague disciplinary rules should be severed, a new case number assigned in which this

Report and Recommendation and any Order adopting it will be docketed.[9]

Plaintiff Percival will be permitted 30 days from the date a new case number is assigned to submit an amended complaint asserting only these claims.

(b)    If an amended complaint is timely and properly filed, plaintiff Percival's claim will be transferred to the Western District.  Plaintiff Percival does not have *in forma pauperis* status and thus, he must submit the full filing fee to the Western District after transfer.

(c)    To the extent that any other plaintiffs assert claims based on unconstitutionally vague disciplinary rules or the "whimsical" application of those rules, such claims should be dismissed for failure to provide "fair notice" of their claims, in accordance with Rule 8(a).

### 5.    *Religious diet claims*

This group of claims pertain to the alleged unconstitutional denial of a religious diet.  This claim is made by plaintiffs Percival, Carney, Fuller (aka Raleem-X), Humbert, Harris, Tyrone Jackson, Mosely, and Adams.  (Dkt. 1, p. 5). These claims are asserted against defendants Caruso, Burnette, and Bergh.

---

[9] Additionally, the Clerk of the Court should docket the items from the lead case plaintiff Percival's new unconstitutionally vague disciplinary rules case as set forth on Appendix C.

Defendant Bergh works at the Alger correctional facility, where all of these plaintiffs were housed at the time the actions that form the basis of their complaint occurred, and defendants Caruso and Burnette are employed by the MDOC in Lansing. Each of the above-listed plaintiffs claims to have made requests for a Muslim diet to each of these defendants and been denied. These plaintiffs claim that the denial is discriminatory and based on an MDOC policy that only Jewish inmates are permitted to have a special religious-based diet. (Dkt. 1, p. 5).

Based on the Rule 20 and Rule 18 principles set forth above, the religious diet claims should be severed from the non-religious diet claims because they are wholly unrelated to any other claims in this case, whether brought by these same plaintiffs, or any other plaintiffs. The question then becomes whether each plaintiff's religious diet claim should be brought separately or whether they can be brought together in a single lawsuit. This group of claims does not seem to present the same problems and issues as those presented in *Coughlin, supra.* While there would still be individualized analyses regarding exhaustion, the common issue regarding whether a religious diet is constitutionally required to be provided to Muslim inmates sufficiently ties these claims together. Further, each plaintiff makes the same claim against the same three defendants and this does not seem to suggest a "buckshot" complaint. Thus, the undersigned

**RECOMMENDS** that the Court sever these claims, direct the Clerk to open a new case for these claims, in which this Report and Recommendation and any Order adopting it will be docketed.[10]

However, once severed, venue is not proper for these claims. As set forth above, venue in a federal question case lies in the district in which any defendant resides or in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b). In this case, according to the complaint, all defendants against whom the religious diet claims are made "reside" in either Lansing, Michigan, which lies in Ingham County, or in Munising, Michigan, which lies in Alger County. In addition, plaintiffs' allegations against all defendants arose in Ingham County and Alger County, where all defendants allegedly committed the acts giving rise to these claims. Again, both Ingham County and Alger County are located in the Western District of Michigan. 28 U.S.C. § 102(b). In these circumstances, venue is proper only in the Western District. Consequently, the undersigned **RECOMMENDS** that, if the District Court severs the religious diet claims, the new case be transferred to the Western District, pursuant to 28 U.S.C. § 1406, where venue is proper.

---

[10] Additionally, the Clerk of the Court should docket the items from the lead case in the religious diet case as set forth on Appendix D.

## III.   RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court grant the following relief:

A.      Each plaintiff's legal mail, access to courts, and related personal property claims should be severed, a new case number assigned to each plaintiff's case (except the lead case), and each plaintiff will have 30 days from the date the new case number is assigned, to submit an amended complaint with only their own legal mail, access to courts, and related personal property claims.  *See also* Appendix A.  Any plaintiff who was granted *in forma pauperis* status will retain that status for the new suit.  After severance and the submission of each new complaint, the issue of proper venue should be examined in each new case.  The filing fee issue will not be addressed until after venue is resolved, so that for any matter transferred, the Western District of Michigan may assess the proper filing fee.

B.      All claims against defendants PLSM and Girard should be **DISMISSED** without prejudice.

C.      Each plaintiff's mattress claim should be severed, a new case number assigned to each plaintiff's case, and each plaintiff will have 30 days from the date the new case number is assigned to submit an amended complaint with only his

own mattress claim.  Any plaintiff who was granted *in forma pauperis* status will retain that status for the new suit.  *See also* Appendix B.  After severance and the submission of each new complaint, the issue of proper venue should be examined in each new case.  The filing fee issue will not be addressed until after venue is resolved, so that for any matter transferred, the Western District of Michigan may assess the proper filing fee.

      D.      Plaintiff Percival's unconstitutionally vague disciplinary rules claim will be severed, a new case number assigned, and plaintiff Percival will be permitted 30 days from the date the new case number is assigned to submit an amended complaint asserting this claim.  *See also* Appendix C.  If an amended complaint is properly and timely filed, the new case should be transferred to the Western District.  The issue of a proper filing fee will be left to the Western District after transfer.  The remaining plaintiffs' claims pertaining to unconstitutionally vague disciplinary rules should be **DISMISSED** for failure to comply with Rule 8(a).

      E.      The religious diet claims asserted by plaintiffs Leon Percival, Jeffrey Carney, Curtis Fuller (aka, Raleem-X), Tyrone Jackson, Jeremy Mosely, and Stephanale Adams should be severed.  The Clerk of the Court should open a new case in which this Report and Recommendation and any Order adopting it should

be docketed.  *See also* Appendix D.  These six plaintiffs must file a joint amended complaint within 45 days of the issuance of the new case number.  Once the amended complaint is timely and properly filed, the new case should be transferred to the Western District of Michigan.  The issue of a proper filing fee will be left to the Western District after transfer.

F.      The undersigned further **RECOMMENDS**, in the interests of judicial efficiency and economy, that all new cases, which are opened pursuant to any Order issued by the District Court, be assigned to the same judges as the lead case.  If the District Court separately severs the claims involving Case No. 06-12485, pending before District Judge Patrick Duggan (as indicated on Appendix E), the undersigned suggests that this new matter be assigned to Judge Duggan as a companion case.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.* 931

F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829

F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any

objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 10 days after service of an

objection, the opposing party must file a concise response proportionate to the

objections in length and complexity.  The response must specifically address each

issue raised in the objections, in the same order, and labeled as "Response to

Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines any

objections are without merit, it may rule without awaiting the response to the

objections.

Date: October 15, 2008
s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on <u>October 15, 2008</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: <u>Cori E. Barkman</u>, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:

**Stephanale Adams, # 229338**
Macomb Correctional Facility
34625 26 Mile Road
New Haven, MI  48048

**Lorenzo Anthony, # 247064**
Standish Maximum Correctional Facility
4713 West M-61
Standish, MI  48658

**Andy Anderson, # 494273**
Alger Maximum Correctional Facility
Industrial Park Drive
P.O. Box 600
Munising, MI  49862

**Julius Bannerman, # 196416**
Alger Maximum Correctional Facility
Industrial Park Drive
P.O. Box 600
Munising, MI  49862

**Jeffery Buhovecky, # 325635**
Alger Maximum Correctional Facility
Industrial Park Drive
P.O. Box 600
Munising, MI  49862

**Serrell Butts, # 360595**
Alger Maximum Correctional Facility
Industrial Park Drive
P.O. Box 600
Munising, MI  49862

**Jeffrey Carney, # 188923**
Marquette Branch Prison
1960 U.S. Hwy 41 South
Marquette, MI  49855

**Usamah Carswell, # 256679**
Huron Valley Complex Men's
3201 Bemis Road
Ypsilanti, MI  48197

**Andre Coleman, # 173324**
Marquette Branch Prison
1960 U.S. Hwy 41 South
Marquette, MI  49855

**Curtis Fuller, # 211080**
Marquette Branch Prison
1960 U.S. Hwy 41 South
Marquette, MI  49855

**William Echols, # 249166**
Alger Maximum Correctional Facility
Industrial Park Drive
P.O. Box 600
Munising, MI  49862

**Delauren Gordon, # 259187**
Alger Maximum Correctional Facility
Industrial Park Drive
P.O. Box 600
Munising, MI  49862

**Edward Hairston, # 276060**
Alger Maximum Correctional Facility
Industrial Park Drive
P.O. Box 600
Munising, MI  49862

**Tyrone Jackson,  # 226967**
Alger Maximum Correctional Facility
Industrial Park Drive
P.O. Box 600
Munising, MI  49862

**Johnny Jackson,  # 243915**
Alger Maximum Correctional Facility
Industrial Park Drive
P.O. Box 600
Munising, MI  49862

**William Little,  # 203715**
Alger Maximum Correctional Facility
Industrial Park Drive
P.O. Box 600
Munising, MI  49862

**Jeremy Mosely,  # 281663**
Alger Maximum Correctional Facility
Industrial Park Drive
P.O. Box 600
Munising, MI  49862

**James Lindsey,  # 256676**
Baraga Maximum Correctional Facility
13924 Wadaga Road
Baraga, MI  49908-9204

**Leon Percival,  # 220239**
Alger Maximum Correctional Facility
Industrial Park Drive
P.O. Box 600
Munising, MI  49862

**Darren Patton,  # 423237**
Alger Maximum Correctional Facility
Industrial Park Drive
P.O. Box 600
Munising, MI  49862

**Antoine Harris,  # 374671**
Alger Maximum Correctional Facility
Industrial Park Drive
P.O. Box 600
Munising, MI  49862

**Randolph Reed,  # 400534**
Alger Maximum Correctional Facility
Industrial Park Drive
P.O. Box 600
Munising, MI  49862

**Eugene Humbert,  # 272728**
Ionia Maximum Correctional Facility
1576 W. Bluewater Hwy
Ionia, MI  48846

s/James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
pete_peltier@mied.uscourts.gov

## APPENDIX A
### DOCKET REFERENCES FOR SEVERED MAIL DELIVERY,
### ACCESS TO COURTS, AND RELATED PERSONAL PROPERTY CASES

| | |
|---|---|
| Eugene Humbert | 1, 17, 36 |
| Tyrone Jackson | 1, 13, 36 |
| Jeremy Mosely | 1, 27, 36 |
| Stephanel Adams | 1, 33, 36 |
| Jeffrey Carney | 1, 20, 36 |
| Andre Coleman | 1, 22, 36 |
| Darren Patton | 1, 25, 36 |
| Andy Anderson | 1, 16, 36 |
| Edward Hairston | 1, 14, 36 |
| Serrell Butts | 1, 8, 36 |
| James Lindsey | 1, 34, 36 |
| Jeffery Buhovecky | 1, 36, 59, 82 |
| Leon Percival | 1, 36, 59, 82, 86, 91 |
| Julius Bannerman | 1, 35, 36 |
| Randolph Reed | 1, 18, 19, 36 |
| Usamah Carswell | 1, 24, 28, 36 |
| William Echols | 1, 10, 36 |
| William Little | 1, 12, 36 |
| Curtis Fuller | 1, 26, 36 |
| Johnny Jackson | 1, 15, 36 |
| Lorenzo Anthony | 1, 29, 36 |
| DeLauren Gordon | 1, 36, 74, 90, 119 |
| Lee Massey | 1, 36, 102, 104, 120 |

# APPENDIX B
DOCKET ENTRY REFERENCES FOR SEVERED
MATTRESS SCHEME CASES

| Antoine Harris | 1, 11, 21, 23 |
|---|---|
| Eugene Humbert | 1, 17, 36 |
| Tyrone Jackson | 1, 13, 36 |
| Jeremy Mosely | 1, 27, 36 |
| Stephanel Adams | 1, 33, 36 |
| Jeffrey Carney | 1, 20, 36 |
| Andre Coleman | 1, 22, 36 |
| Darren Patton | 1, 25, 36 |
| Andy Anderson | 1, 16, 36 |
| Edward Hairston | 1, 14, 36 |
| Serrell Butts | 1, 8, 36 |
| James Lindsey | 1, 34, 36 |
| Jeffery Buhovecky | 1, 36, 59, 82 |
| Leon Percival | 1, 36, 59, 82 |
| Julius Bannerman | 1, 35, 36 |
| Randolph Reed | 1, 18, 19, 36 |
| Usamah Carswell | 1, 24, 28, 36 |
| William Echols | 1, 10, 36 |
| William Little | 1, 12, 36 |
| Curtis Fuller | 1, 26, 36 |
| Johnny Jackson | 1, 15, 36 |
| Lorenzo Anthony | 1, 29, 36 |
| DeLauren Gordon | 1, 36, 74, 90, 119 |
| Lee Massey | 1, 36, 102, 104, 120 |

Report and Recommendation
Dismissal, Severance, and Transfer
*Harris et al v. Gerth et al*; 08-12374

# APPENDIX C
DOCKET ENTRY REFERENCE FOR SINGLE SEVERED
UNCONSTITUTIONALLY VAGUE DISCIPLINARY RULES CASE

| Leon Percival | 1, 36, 59, 82 |
|---|---|

Report and Recommendation
Dismissal, Severance, and Transfer
*Harris et al v. Gerth et al*; 08-12374

# APPENDIX D
DOCKET ENTRIES FOR SINGLE
SEVERED RELIGIOUS DIET CASE

| | |
|---|---|
| Leon Percival, Jeffrey Carney, Curtis Fuller (aka Raleem-X), Antoine Harris, Eugene Humbert, Tyrone Jackson, Jeremy Mosely, and Stephanel Adams | 1, 11, 13, 17, 20, 21, 23, 26, 27, 33, 36, 59, 82 |
| | |

Report and Recommendation
Dismissal, Severance, and Transfer
*Harris et al v. Gerth et al*; 08-12374

## APPENDIX E

*DOCKET ENTRIES FOR POSSIBLE SINGLE SEVERED*
*LAWSUIT OF CLAIMS PERTAINING TO CASE NO. 06-12485*

| | |
|---|---|
| Leon Percival, Jeffrey Carney, Curtis Fuller (aka Raleem-X), and Andre Coleman | 1, 20, 22, 26, 36, 59, 82 |
| | |