UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEON PERCIVAL,                                    Case No. 08-12374

                    Plaintiff,                    Robert H. Cleland
v.                                                United States District Judge

SANDRA GIRARD and                                 Michael Hluchaniuk
PRISON LEGAL SERVICES OF                          United States Magistrate Judge
MICHIGAN,

                    Defendants.
_____/

## REPORT AND RECOMMENDATION
## DEFENDANTS' SECOND MOTION TO DISMISS (Dkt. 173)

## I.    PROCEDURAL HISTORY

       This is a prisoner civil rights action filed under 42 U.S.C. § 1983, originally

brought by multiple plaintiffs who are in the custody of the Michigan Department

of Corrections (MDOC).  (Dkt.1).  This matter was referred to the undersigned for

all pretrial proceedings by District Judge Robert H. Cleland.  (Dkt. 40).  The

undersigned recommended that certain claims be dismissed, that others be severed,

and some claims be transferred.  (Dkt. 122).  Judge Cleland adopted that

recommendation in part, and dismissed all plaintiffs except Leon Percival, who

was permitted to file an amended complaint.  (Dkt. 150, 154).  Judge Cleland

subsequently dismissed all defendants named in Percival's amended complaint except for defendants Sandra Girard and defendant Prison Legal Services of Michigan, Inc. (PLSM).  (Dkt. 163).[1]  These defendants filed a second motion to dismiss on March 19, 2009.  (Dkt. 173).  Percival filed a response on April 23, 2009.  (Dkt. 179).  Also in response to the second motion to dismiss, Percival filed a motion for leave to file a second amended complaint.  (Dkt. 175).  Defendants filed a response on May 7, 2009.  (Dkt. 180).  This motion will be disposed of via separate order, but its merits and defendants' futility arguments will be analyzed in this report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion to dismiss be **GRANTED** and that plaintiff's complaint be **DISMISSED** with prejudice.

---

[1]  Defendants Girard and PLSM previously filed a motion to dismiss.  (Dkt. 138).  This was held in abeyance pending action on the October 15, 2008 Report and Recommendation and was then terminated as moot by Judge Cleland's December 30, 2008 Opinion and Order.  (Dkt. 144, 150).  While the undersigned recommended that the claims against Girard and PLSM be dismissed on the merits, Judge Cleland did not address the merits of these issues in his opinion and order.  Rather, he merely determined that plaintiffs' objections to the recommendation for dismissal was no longer properly before the Court because the only remaining plaintiff, Percival, was required to file an amended complaint.  (Dkt. 150, p. 14).

## II.    BACKGROUND FACTS AND PLAINTIFF'S COMPLAINTS

Plaintiff asserts claims against PLSM and its director, Sandra Girard, who represented the prisoners in the *Cain v. MDOC* state court class action suit.   The *Cain v. MDOC* state court class action settlement involved MDOC policies pertaining to prisoners' access to the courts, personal property rights, and classification and placement of prisoners.  *King v. Zamiara*, 150 Fed.Appx. 485, 487 n. 2 (6th Cir. 2005).  The 2003 MDOC Annual Report provides background information on the state court proceeding and settlement to which plaintiff refers in the amended complaint and the proposed second amended complaint in this case:

> In April, 1988, seven male prisoners filed a class action lawsuit which was assigned to Judge James Giddings in the Ingham County Circuit Court. The case centered on the control of the type and amount of property inmates are permitted, prisoners' access to courts, and the prisoner classification system. In September, 1988, female prisoners were allowed to intervene, which resulted in additional issues. The case proceeded for the next eight years with the prisoners representing themselves and with no resolution of any of the actual claims in the case.
>
> In August, 1996, the Michigan Supreme Court issued an order calling for swift resolution of the case and ordered the trial court to investigate the advisability of appointing special counsel to represent the class of male prisoners; Prison Legal Services of Michigan (PLSM)

was appointed with an office located inside the prison. Judge Giddings then held trial in the Cain case from April through December of 1997 and ultimately issued orders which resolved the property claims. No other claims were resolved.

When the Department converted the Egeler facility, where the PLSM office and prisoners were located, to the Reception Center, the Attorney General's Office filed a motion with the trial court asking that PLSM be required to vacate any office within the Department. This was denied by Judge Giddings and the Attorney General's Office appealed. On December 27, 2002 the Court of Appeals issued an opinion and order requiring PLSM to move out of the Egeler facility. The Court ruled resoundingly in the Department's favor and upheld their previous requirement that the PLSM office and all 12 of the workers could be removed from Egeler. Subsequent to this ruling, PLSM filed motions with the trial court, the appeals court, and the Supreme Court. On March 19, 2003 the Supreme Court ruled that Prison Legal Services of Michigan had to vacate their office within the Egeler facility and that the trial court had to ensure that the Cain case was brought to final Judgment by November 1, 2003.

Judge Giddings ordered the parties to negotiate with retired Judge Michael Harrison and after many months of negotiations, the parties approved a settlement. On November 6, 2003, the court entered four stipulations approving settlement agreements in the Cain case. The agreements covered access to courts, prisoner security classification, typewriters, and miscellaneous issues. This action ended the court's involvement in the 15-year-old case. The plaintiffs' counsel will continue to monitor compliance with the settlement until November of 2005 but the court's jurisdiction has ended.

*See* http://www.michigan.gov/documents/2003_Annual_Report_117583_7.pdf,

pp. 22-23.  With respect to the state court proceeding and settlement, the original

plaintiffs in this case made three related different claims: (1) the settlement

agreement was improper; (2) defendants Girard and PLSM wrongfully failed to do

anything after November 2005, when the court-ordered monitoring of compliance

by Girard and PLSM ended; and (3) defendants Girard and PLSM are engaged in a

"conspiracy" with prison officials throughout the state regarding plaintiffs' legal

mail and personal property claims.  As noted above, the undersigned previously

recommended the dismissal of these claims with prejudice based on the *Rooker-*

*Feldman* doctrine.

According to defendants, the claims in plaintiff's proposed second amended

complaint essentially parallel those in the first and are entirely futile.  According

to defendants, paragraphs 8-53 of the proposed second amended complaint

describe the settlement in *Cain v. MDOC* and compare to paragraphs 18-63 in

plaintiff's first amended complaint.  Paragraphs 54-82 are new and describe a

process in 1998 where the *Cain* court allowed the MDOC to implement a new

property policy.  Under the new policy, prisoners had to send out property that was

not allowed.  To insure delivery, the court required the MDOC to ship via UPS.  In

this case, plaintiff asserts that UPS delivered his property to the wrong address and

that he sued UPS and lost.  He now claims that defendants Girard and PLSM are liable for the loss.

According to defendants, ¶¶ 83-96 of plaintiff's proposed second amended complaint parallel ¶¶ 64-107 of his first amended complaint.  He again claims that defendants did not enforce the *Cain* settlement, which plaintiff claims was violated when Michigan closed its only Level VI prison, the highest security level, and sent plaintiff to a Level V prison, a lower security level facility.  Defendants further assert that ¶¶ 97-117 of plaintiff's proposed second amended complaint parallel ¶¶ 108-235 of his first amended complaint.  Here, plaintiff claims that defendants Girard and PLSM did not forward mail after the *Cain* case and their representation of the class ended.  Paragraphs 118-132 of plaintiff's second amended complaint parallel ¶¶ 236-257 of his first amended complaint, where plaintiff claims that defendants, who were never members of Michigan's legislative or executive branches, had something to do with the passage of part of the 2008-2009 Corrections appropriations bill, to which plaintiff objects.

## III.   ANALYSIS AND CONCLUSIONS

### A.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the

claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007), quoting, *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

The Supreme Court recently raised the bar for pleading requirements beyond the old "no-set-of-facts" standard of *Conley v. Gibson*, 355 U.S. 41, 78 (1957), that had prevailed for the last few decades. *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 2009 WL 2497928, *2 (6th Cir. 2009), citing, *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009); *see also Twombly*, 550 U.S. at 555. In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949. The Sixth Circuit observed that this new standard is designed to screen out cases that, while not utterly impossible, are "implausible." *Courie*, at *2. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. And although the Court must accept all well-pleaded factual allegations in the complaint as true, it need not "'accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at

Report and Recommendation
Defendants' Motion to Dismiss
*Percival v. Girard*; 08-12374

555, quoting, *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also Iqbal*, 129

S.Ct. at 1949.  The Sixth Circuit noted that "[e]xactly how implausible is

'implausible' remains to be seen, as such a malleable standard will have to be

worked out in practice."  *Courie*, *2.

    Where a plaintiff is proceeding without the assistance of counsel, the court

is still required to liberally construe the complaint and hold it to a less stringent

standard than a similar pleading drafted by an attorney.  *See e.g. Simmons v.

Caruso*, 2009 WL 2922046 (E.D. Mich. 2009), citing, *Haines v. Kerner*, 404 U.S.

519, 520 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999).

Thus, the Court must still read plaintiff's *pro se* complaint indulgently and accept

plaintiff's allegations as true, unless they are clearly irrational or wholly

incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson v. Pardus*, 127

S.Ct. at 2200 (The Court of Appeals improperly departed "from the liberal

pleading standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the

*pro se* complaint at issue.).

    Where, as here, defendants have already answered the original complaint

(Dkt. 183), plaintiff can amend only by leave of the Court.  *See* Fed.R.Civ.P. 15.

Rule 15(a) provides, however, that such "leave shall be freely given when justice

so requires."  In *Perkins v. American Elec. Power Fuel Supply, Inc.*, 246 F.3d 593,

Report and Recommendation
Defendants' Motion to Dismiss
*Percival v. Girard*; 08-12374

605 (6th Cir. 2001), the court listed several factors to consider in order to decide whether to allow an amendment: "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment."  Here, defendants primarily argue that plaintiff's proposed amendments are futile.  The Court need not grant leave to amend where the amendment would be "futile."  *Foman v. Davis*, 371 U.S. 178, 182 (1962). Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss.  *Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005), citing, *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.,* 632 F.2d 21, 23 (6th Cir. 1980).

The primary difference between the first amended complaint and the second amended complaint is a paring down of the allegations relating to the previously dismissed defendants and the addition of one claim against the current defendants. Given the similarity between the allegations and the causes of action in first amended complaint and the second amended complaint, the undersigned will examine the claims set forth in the proposed second amended complaint under the futility standard, which essentially is the same standard as a motion to dismiss for failure to state a claim.

Report and Recommendation
Defendants' Motion to Dismiss
*Percival v. Girard*; 08-12374

B.    *Rooker-Feldman*

Many of plaintiff's claims against Girard and PLSM are barred for the same

reasons as previously suggested by the undersigned.  To the extent that plaintiff

seeks review of the state court proceedings in *Cain v. MDOC*, this Court does not

have jurisdiction over his claims because they are barred by the *Rooker-Feldman*[2]

doctrine.  The *Rooker-Feldman* doctrine bars federal courts, other than the United

States Supreme Court, from exercising "appellate jurisdiction over the decisions

and/or proceedings of state courts, including claims that are 'inextricably

intertwined' with issues decided in state court proceedings."  *Executive Arts*

*Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004) (citations

omitted); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280,

284 (2005) (The *Rooker-Feldman* doctrine "is confined to cases of the kind from

which the doctrine acquired its name: cases brought by state-court losers

complaining of injuries caused by state-court judgments ... and inviting district

court review and rejection of those judgments.").  In his third, fourth, fifth, and

fourteenth causes of action, plaintiff essentially asks this Court to declare that the

---

[2] The *Rooker-Feldman* doctrine is named for *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

court-approved settlement agreement in *Cain v. MDOC* was improper and that defendants PLSM and Girard acted inappropriately in that case. This Court would necessarily become inappropriately "inextricably" entwined with that state court case. This is not permitted under *Rooker-Feldman* and the Court should dismiss the causes of action for want of jurisdiction.

Through his conspiracy claim, plaintiff seemingly attempts to tie his claims against PLSM and Girard to the actions of various corrections personnel (who are no longer defendants in this suit) as it pertains to legal mail, access to courts, and related personal property issues. The undersigned suggests that plaintiffs' conspiracy claim cannot be used to circumvent the *Rooker-Feldman* doctrine. As this Court held long ago, the "broad language of the Rules of Civil Procedure on joinder of claims and remedies, as well as parties, Rules 18 and 20, is limited by Rule 82 providing that the Rules of Civil Procedure shall not be construed to extend or limit the jurisdiction of the district courts or the venue of actions therein." *Square D Co. v. United Elec., Radio and Mach. Workers of America*, 123 F.Supp. 776, 782 (E.D. Mich. 1954); *see also U.S. ex rel. Fry v. Guidant Corp.*, 2006 WL 1102397 (M.D. Tenn. 2006) (same). Thus, the undersigned suggests that plaintiff's conspiracy claims, as set forth in his third, fourth, fifth, and fourteenth causes of action, cannot save the proper dismissal of all claims

brought against defendants PLSM and Girard for want of jurisdiction under the *Rooker-Feldman* doctrine.

    C.    <u>Alleged Breaches of *Cain* Settlement Agreement</u>.

Virtually all of plaintiff's claims are repackaged and thinly disguised claims that defendants breached or conspired to breach the *Cain* settlement agreement. However, a § 1983 claim is not the proper remedy to enforce a settlement agreement. Courts have consistently ruled that a mere contract dispute does not give rise to a section 1983 cause of action because an ordinary breach of contract suit in state court is a sufficient post-deprivation remedy. *See e.g. Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196-97 (2001) (holding that an ordinary breach of contract suit was enough process due to resolve a state's alleged failure to comply with contract terms that resulted in depriving plaintiffs of payments); *Costello v. Fairfield*, 811 F.2d 782, 784 (2d Cir. 1987) (holding that the interpretation and subsequent resolution of a contract term through state court remedies did not constitute a denial of due process); *Sudeikis v. Chi. Transit Auth.*, 774 F.2d 766, 770 (7th Cir. 1985) (holding that a city agency's alleged breach of a settlement agreement did not give rise to a viable section 1983 claim); *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) (A § 1983 claim is not the proper remedy to enforce a settlement agreement.); *Kokkonen v. Guardian Life Ins. Co. of*

*Am.*, 511 U.S. 375, 381-82 (1994) ("[E]nforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.").

Plaintiff's allegations and the relief requested in his proposed second amended complaint clearly show that his entire lawsuit is an attempt show that defendants violated the settlement agreement.  In plaintiff's proposed second amended complaint, he asserts injuries to his "property interest" in the *Cain* settlement; that defendants conspired to obstruct the "due course of justice in state court proceedings"; that defendants obstructed his ability to prosecute his property claims by forcing plaintiff to enter into a contract with UPS under the settlement; that defendants prevented him from complaining that the court orders in *Cain* were not being followed; and defendants failed to "reasonably assert Plaintiff's rights in the *Cain v. MDOC* litigation resulting in injury to plaintiff."  Indeed, plaintiff asserts that "Defendants' conduct amounts to malpractice and breach of contract, and gross negligence."  (Dkt. 175, p. 35).  The undersigned suggests that plaintiff's claims against defendants are merely claims for breach of the state court settlement agreement and thus, this Court has no jurisdiction over them.

   D.    <u>RICO</u>

To the extent that the District Court concludes that plaintiff's claims are not entirely barred for the reasons set forth above, the undersigned further suggests

Report and Recommendation
Defendants' Motion to Dismiss
*Percival v. Girard*; 08-12374

that plaintiff's claims under the Racketeer Influenced and Corrupt Organizations Act (RICO) as found in his first, sixth, eighth, eleventh, and twelfth causes of action of his proposed second amended complaint fail to state a claim.  The undersigned suggests that allowing plaintiff to proceed under any RICO theory would be futile as he fails to state any RICO claim in his proposed second amended complaint.  RICO defines a "pattern of racketeering activity" as "at least two acts of racketeering activity."  18 U.S.C. § 1961(5).  Crimes comprising "racketeering activity" are listed under 18 U.S.C. § 1961(1) and are commonly referred to as "predicate acts."  The listed predicate acts include, among others: mail fraud (18 U.S.C. § 1341); wire fraud (18 U.S.C. § 1343); interference with commerce, robbery, or extortion (18 U.S.C. § 1951); tampering with a witness, victim, or an informant (18 U.S.C. § 1512), along with state law bribery and extortion, to the extent such crimes are punishable by imprisonment for more than one year.

The Supreme Court requires a RICO plaintiff do more than merely recite two predicate acts because "there is something to a RICO pattern beyond the number of predicate acts involved."  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238 (1989).  Rather, a plaintiff must show that "the predicate acts are related and that they constitute or pose a threat of continued criminal activity."

*H.J. Inc.*, 492 U.S. at 239.  It is this notion of "continuity plus relationship" that combines to produce a "pattern" under RICO.  *Moon v. Harrison Piping Supply*, 465 F.3d 719, 724 (6th Cir. 2006).  Thus, merely pointing to two predicate acts is insufficient to meet the pattern requirement.  A plaintiff must present evidence of "continuity," which "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  *H.J. Inc.*, 492 U.S. at 241.  A closed period of continuity may be demonstrated "by proving a series of related predicates extending over a substantial period of time."  *Id.* at 242.  However, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement."  *Id*.  In *Moon*, the Sixth Circuit held the plaintiff failed to state a RICO claim because he did not establish continuity.  *Id.* at 719.  The plaintiff's claim was based on allegations his employer colluded with an insurance provider and a physician to deny him workers compensation benefits.  The court found that, even though predicate acts occurring over a 30-month period may have constituted a "significant period of time," facts establishing a RICO pattern were still lacking because all of the alleged predicate acts "were keyed to [the defendants'] single objective of depriving [the plaintiff] of his benefits."  *Id.* at 725.  Where a single objective is alleged, "the purported

racketeering activity does not bear the markings of the long-term criminal conduct about which Congress was concerned when it enacted RICO." *Id*. at 725-26.

Even assuming that the predicate acts alleged by plaintiff satisfy RICO, plaintiff fails to allege any predicate acts in his proposed second amended complaint that pose a risk of continued criminal activity. Rather, he merely alleged that defendants committed acts targeted to injure plaintiff in a closed period of time. In addition, all of plaintiff's allegations are lacking because all of the alleged predicate acts "were keyed to [the defendants'] single objective of depriving [the plaintiff] of" his rights under the settlement agreement. *Id*. at 725. Where a single objective is alleged, "the purported racketeering activity does not bear the markings of the long-term criminal conduct about which Congress was concerned when it enacted RICO." *Id*. at 725-26. Thus, the undersigned suggests that plaintiff's RICO claims as set forth in the first, sixth, eighth, eleventh, and twelfth causes of action of his proposed amended complaint are entirely futile in that they fail to state a claim on which relief may be granted.

E.   42 U.S.C. §§ 1985(2), 1985(3), and 1986

In plaintiff's third, fourth, and ninth causes of action of his proposed second amended complaint, he claims that he is the victim of a conspiracy to deny him his civil rights in violation of 42 U.S.C. §§ 1985 and 1986. In order to establish a

violation of § 1985(3), plaintiff would have to show (1) a conspiracy involving two or more people, (2) for the purpose of depriving, directly or indirectly a person or class of persons the equal protection of the law, (3) an act in furtherance of the conspiracy and (4) with a resulting injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.  It must also be shown that the conspiracy was motivated by a class-based animus such as race. *Smith v. Thornbury*, 136 F.3d 1070, 1078 (6th Cir. 1998).  To state a claim under § 1985(2), a plaintiff must allege facts in his complaint supporting a claim of a conspiracy either (1) to influence parties, witnesses, or jurors in federal court proceedings; or (2) "for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any state" motivated by racial or other class-based discriminatory animus.  *McGhan v. Kalkaska Co. Dep't of Human Serv.*, 2009 WL 2170151, *14 (W.D. Mich. 2009).  Plaintiff's race and religious-based claims under § 1985 are found in his third and fourth causes of action.  As discussed above, the undersigned suggests that these claims are barred by the *Rooker-Feldman* doctrine.  This conclusion applies, regardless of the theory alleged, given that these causes of action are based on the allegations that defendants obstructed the "due course of justice in state court proceedings" and failed to enforce the classes' right to equal protection.

In addition, the undersigned suggests that plaintiff's allegations of a conspiracy to deprive him of his constitutional rights based on any racial and religious animus are insufficiently specific and do not state a claim. *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) ("conspiracy must be pled with some degree of specificity and ... vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim."); *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984) (Conspiracy claim properly dismissed where "complaint merely alleged broad conclusory negligence language void of the factual allegations necessary to support a conspiracy theory.").

Plaintiff states that he is black and a Muslim, that Level VI security subclass in the class action lawsuit was made up of over "85% so-called minorities," that the PLSM "enterprise assisted [the director of the MDOC] in targeting Plaintiff based on his race and membership of the level vi subclass, and did disparately treat Plaintiff, and strip Plaintiff of court-ordered relief to save MDOC money in exchange for a new contract and financial relationship PLSM enjoyed for almost thirty." (Dkt. 175, p. 12).  Plaintiff further alleges that no whites were similarly targeted.  *Id*.  The undersigned suggests that, to the extent these claims are not barred by *Rooker-Feldman*, plaintiff has failed to provide a sufficient

factual basis for these conspiracy-based claims, found in the third, fourth, and

ninth causes of action in plaintiff's proposed second amended complaint, to go

forward.[3]

      F.    <u>Conspiracy Under § 1983</u>.

      The undersigned also suggests that plaintiff's 1983 claims are barred

because defendants are not state actors. Generally, attorneys, even those

appointed by the court, do not act under color of state law for purposes of claims

asserted against them under 42 U.S.C. § 1983. *Gray v. Rose*, 2009 WL 2132623,

*11 (S.D. Ohio 2009), citing, *Polk Co. v. Dodson*, 454 U.S. 312 (1981). However,

an otherwise private person acts "under color" of state law if that person conspires

with state officials to deprive another of federal rights. *Gray*, at *11, citing,

*Dennis v. Sparks*, 449 U.S. 24 (1980). Thus, to the extent that plaintiff's § 1983

claims are not grounded in a conspiracy based theory, they are barred as a matter

of law because defendants are not state actors.

      With respect to his conspiracy theories, plaintiff alleges that defendants

conspired with MDOC officials (1) to deprive plaintiff of his right to speech, to

---

    [3] Section 1986 is merely a remedial provision for conspiracies properly alleged under § 1985. In the absence of a proper § 1985 claim, § 1986 provides no remedy. *See Amadasu v. Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008).

access the courts, and to due process, (2) to deprive plaintiff of due process and to obstruct his ability to prosecute his valid property claims, and entered plaintiff into a contract with UPS without his consent, which contributed to the loss of $1700 in property; (3) to retaliate against plaintiff and deter him from pursuing his claims regarding the circumvention of court orders, contrary to the Fourteenth Amendment; and (4) to destroy plaintiff's summons, complaint, and check causing the dismissal of a state court claim.  (Dkt. 175).

In this case, plaintiff's conspiracy theories are grounded in his allegations that these defendants, along with the MDOC, "engaged in a pattern and series of acts to block Plaintiff's efforts to seek judicial review of the circumvention of the settlement agreements and to punish Plaintiff for seeking redress and encouraging others to do the same."  (Dkt. 174, p. 11). To the extent that plaintiff's conspiracy based § 1983 claims are not barred by the *Rooker-Feldman* doctrine or fall outside the scope of a breach of a settlement agreement, the undersigned suggests that they fail for the same reasons as plaintiff's other conspiracy claims set forth above. *Center for Bio-Ethical Reform*, 477 F.3d at 832 ("conspiracy must be pled with some degree of specificity and ... vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim."); *Jaco*, 739 F.2d at 245 (Conspiracy claim properly dismissed where "complaint merely alleged broad

conclusory negligence language void of the factual allegations necessary to

support a conspiracy theory.").  Plaintiff's allegations are too vague and

conclusory to survive a motion to dismiss and thus, they are entirely futile.[4]

G.    State Law Claims

To the extent that plaintiffs raise any other state law claims against

defendants PLSM and Girard, including violations of the Michigan Constitution,

malpractice, conversion, and negligence, the undersigned suggests that this Court

decline to exercise supplemental jurisdiction over such state law claims given that

all federal claims against these defendants will be dismissed.  *See United Mine*

*Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed

before trial, ... the state claims should be dismissed as well."); *Experimental*

---

[4] Notably, some of plaintiff's § 1983 theories as alleged against MDOC personnel have been previously determined to be without merit.  In *Coleman v. Granholm*, 2008 WL 919642, *4 (E.D. Mich. 2008), Percival, one of several prisoner-plaintiffs, argued "that he was stripped of the protections provided in the 'Cain' settlement agreement when the MDOC abolished 'level vi' and placed him in administrative segregation."  Percival also asserted that the "settlement agreement the MDOC entered into to resolve a class action lawsuit brought by inmates in 1986 gives him 'a state-created constitutionally protected right to possession and use of his tape player, cassettes, lawbooks, legal assistance agreements, meaningful in-cell activity, mental health evaluations, and access to typing room beyond 2 hrs.'"  *Id*.  The court concluded that Percival's due process claims and access to court claims failed as a matter of law.  Likewise, any "conspiracy" that these defendants violated Percival's constitutional rights in this same manner fails as a matter of law.

*Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.").

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 10 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each

Report and Recommendation
Defendants' Motion to Dismiss
*Percival v. Girard*; 08-12374

issue raised in the objections, in the same order, and labeled as "Response to

Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that

any objections are without merit, it may rule without awaiting the response.

<table>
<tr><td></td><td>s/Michael Hluchaniuk</td></tr>
<tr><td>Date: November 18, 2009</td><td>Michael Hluchaniuk<br>United States Magistrate Judge</td></tr>
</table>

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>November 18, 2009</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Scott R. Rothermel Sandra L. Girard</u>, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): <u>Leon Percival, # 220239, MARQUETTE BRANCH PRISON, 1960 U.S. Hwy 41 South, Marquette, MI 49855</u>.

s/Tammy Hallwood
Courtroom Deputy Clerk
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
tammy-hallwood@mied.uscourts.gov