# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LEON PERCIVAL,

    Plaintiff,

v.                                                       Case No. 08-CV-12374

SANDRA GIRARD, and
PRISON LEGAL SERVICES OF MICHIGAN,

    Defendants.
_____/

## OPINION AND ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS,
## (2) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## (3) GRANTING DEFENDANTS' MOTION TO DISMISS AND
## (4) DENYING PLAINTIFF'S MOTION TO AMEND

Before the court is a motion to dismiss, filed by Defendants Sandra Girard and Prison Legal Services of Michigan ("PLSM") on March 19, 2009. Magistrate Judge Michael Hluchaniuk issued a Report and Recommendation ("R&R"), recommending that this court grant Defendants' motion to dismiss and dismiss with prejudice Plaintiff Leon Percival's complaint. Plaintiff filed objections on January 11, 2010. For the reasons stated below, the court will overrule Plaintiff's objections, adopt the Magistrate Judge's R&R, grant Defendants' motion to dismiss, and deny Plaintiff's motion to amend.

## I. BACKGROUND

As originally filed, this case consisted of over thirty prisoners asserting a multitude of civil rights claims against various defendants. The court referred all pretrial matters to Magistrate Judge Hluchaniuk. (08/14/08 Order.) The Magistrate Judge efficiently and logically organized the claims, and on December 30, 2008, the court

dismissed without prejudice all of the plaintiffs, except Plaintiff Percival, for misjoinder pursuant to Federal Rule of Civil Procedure 21. (12/30/08 Order.) On January 29, 2009, Percival filed an amended complaint. The court dismissed without prejudice all of the defendants named in the first amended complaint, except Defendants Girard and PLSM, for misjoinder pursuant to Federal Rule of Civil Procedure 21. (2/11/09 Order.) The remaining Defendants, Girard and PLSM, filed a motion to dismiss on March 19, 2009, and Plaintiff filed a motion for leave to file a second amended complaint on April 3, 2009.[1]

Plaintiff sets forth the facts underlying his complaint in four sections: (1) "Introduction," (2) "The Bribe," (3) "Fraud and Predicate Acts," and (4) "Unlawful Tax Retaliation Scheme." (Pl.'s Second Am. Compl.) In the Introduction section, Plaintiff states that he was a class member of *Cain v. MDOC*[2] and that PLSM and its executive

---

[1] In addressing Plaintiff's second amended complaint, the Magistrate Judge stated:

> The primary difference between the first amended complaint and the second amended complaint is a paring down of the allegations relating to the previously dismissed defendants and the addition of one claim against the current defendants. Given the similarity between the allegations and the causes of action in first amended complaint and the second amended complaint, the undersigned will examine the claims set forth in the proposed second amended complaint under the futility standard, which essentially is the same standard as a motion to dismiss for failure to state a claim.

(R&R at 9.) The court agrees with this assessment, and for clarity purposes, will also examine the claims set forth in Plaintiff's second amended complaint. Whether addressing the first amended complaint under Federal Rule of Civil Procedure 12(b)(6) or the second amended complaint under the futility standard, the court's analysis and conclusion is the same.

[2] *Cain v. MDOC* refers to:

director, Girard, were appointed to represent him. (*Id.* ¶ 9, 10.) Plaintiff describes the *Cain* settlement agreements and alleges that "the MDOC enterprise and the PLSM enterprise engaged in a pattern and series of acts to block Plaintiff's efforts to seek judicial review of the circumvention of the settlement agreements and to punish Plaintiff for seeking redress and encouraging others to do the same." (*Id.* ¶ 20.)

In "The Bribe" section, Plaintiff states that "Defendants, while appointed to represent Plaintiff in the *Cain v. MDOC* case, began to bargain for a new contract for PLSM to represent prisoners in the same capacity it had for over twenty years with the MDOC." (*Id.* ¶ 23.) Plaintiff alleges that this new contract constitutes "the bribe," and that in exchange, Defendants "gave their assistance to the MDOC enterprise in reneging on the relief ordered in the settlement agreements, and took numerous actions to ensure that major violations thereof went unchallenged." (*Id.* ¶ 27.) Pursuant to this "bribe," Plaintiff alleges that "Defendants agreed to settle the case in exchange for a private settlement agreement governed by MCL 600.5531(F), and to settle the case for Policy Directives which have not force of law." (*Id.* ¶ 28.)

In the "Fraud and Predicate Acts" section, Plaintiff discusses the Michigan Supreme Court's "Order to Settle." (*Id.* ¶ 35.) He blames Defendants for this order, which stripped Plaintiff of his right to trial and to testify. (*Id.*) Plaintiff alleges that he

---

> a class action lawsuit initiated by a group of prisoners in 1988 against the Department of Corrections. The *Cain* litigation was primarily concerned with prisoner personal property issues, but it also raised issues relating to prisoner classification and access to the courts. The *Cain* case spawned many interim orders during the fifteen years that it was pending.

*King v. Zamiara*, No. 4:02-CV-141, 2009 WL 3424221, at *1 (W.D. Mich. Oct. 20, 2009).

3

brought to Defendant's attention the "MDOC enterprise's circumvention of the settlement agreements," but they did nothing. (*Id.* ¶ 39.) He further alleges that when he "inquired about the complaints being filed to seek contempt sanctions or to reinstate the case," Defendants falsely assured Plaintiff that the complaints had been processed. As result, Plaintiff asserts that he suffered the following injuries: (1) "the loss of $1700 worth of personal property," (2) "the loss of a protected property interest being the settlement's diminished value," and (3) "the loss of job assignment and wages of $144.00 per year from June 2004 to present." (*Id.* ¶ 45.)

Plaintiff sets forth the facts underlying his U.P.S. shipping claim in the "Property" subsection to the "Fraud and Predicate Acts" section. Plaintiff states that the "court ordered the MDOC pay for shipping of the confiscated property out of the institution" and that the "PLSM and MDOC enterprises arranged for U.P.S. to do the shipping." (Id. 57, 58.) Plaintiff asserts that the property was not delivered and that he filed grievances with both MDOC and PLSM. (*Id.* ¶ 60-62.) Plaintiff complains that PLSM stalled on this complaint and failed to officially raise this issue in the *Cain* litigation. (*Id.* ¶ 70.) Plaintiff then attempted to intervene in the *Cain* case, but the judge denied his motion. (*Id.* ¶ 63.) Plaintiff states that "PLSM took until about 30 days prior to the statute of limitations to suggest that U.P.S. was at fault and that Plaintiff should pursue U.P.S. in small claims court," even though Plaintiff insisted that MDOC was at fault. (*Id.* ¶ 64.) Plaintiff lost his claim against U.P.S. in small claims court and is now suing Defendants based on these events because he alleges "PLSM allowed MDOC to enter Plaintiff into a binding contract with U.P.S. without his knowledge or consent, and then caused Plaintiff to waive his right to appeal by filing a small claims case only to find out that PLSM

4

contributed to the loss of $1700 worth of property, and the inability to recover from U.P.S." (*Id.* ¶ 69.)

Plaintiff also brings an action based on his transfer from a Level VI facility to a Level V facility, which is lesser security prison. (*Id.* ¶¶ 83-87.) Plaintiff alleges that he "wrote grievances and complaints to the MDOC and PLSM enterprises, and made it clear that the transfer was a *Cain* settlement violation," but that Defendants blocked his "effort to file a monitor complaint for arbitration or to reinstate the case, as a gratuity and offer to MDOC." (*Id.* ¶¶ 89, 91.) Based on this, Plaintiff alleges he was "stripped of a protected property interest being the diminished value of the settlement agreement, stripped of a protected property interest in raising *Cain* violations before the Court, and stripped of wages." (*Id.* ¶ 95.)

In the "Access to Courts and Mails" subsection of the "Fraud and Predicate Acts" section, Plaintiff notes that stamps were a significant issue in the *Cain* case, but to his detriment, were replaced by metered envelopes. (*Id.* ¶¶ 101, 102). This meant that "Plaintiff and the class were left without any way to determine the amount of postage for themselves prior to submitting mail." (*Id.* ¶ 103.) Plaintiff alleges that on October 16, 2007, an MDOC employee, who has been dismissed from this case, opened his mail claiming it had insufficient postage. (*Id.* ¶ 106.) Inside the envelope was a "check, summons, complaint, and correspondence inside, which dealt with many *Cain* issues and MDOC['s] failure to comply with Court orders." (*Id.* ¶ 108.) Plaintiff alleges that Gerth mailed the envelope to Defendants, who then ignored it. (*Id.* ¶ 110.) Plaintiff claims that "[b]ut for PLSM's failure to raise the issue regarding lack of ability to serve process in state court during the access to court phase of the *Cain* case[,]. . . Plaintiff

5

would have had a method to serve process and would have prevailed in convincing the court to provide a remedy therefor prior to closing the case." (*Id.* ¶ 116.)

In the final section, "Unlawful Tax Retaliation Scheme," Plaintiff alleges that Defendants are responsible for the 2008-2009 corrections appropriations bill, which imposes a 10% surchage on items purchased by prisoners in state facilities. (*Id.* ¶¶ 119, 120.)

Based on these factual allegations, Plaintiff asserted fourteen causes of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"); the First Amendment; United States Constitution Article I, §§ 9, 10; the Supremacy Clause; the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. § 1985, 42 U.S.C. § 1986, the Michigan Constitution, and other state laws. (*Id.* at 26-31.)

## II. STANDARD

### A. Motion to Dismiss Standard

When ruling on a motion to dismiss pursuant to 12(b)(6) of the Federal Rules of Civil Procedure, the court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true. *Evans-Marshall v. Board of Educ.,* 428 F.3d 223, 228 (6th Cir. 2005); *Rossborough Mfg. Co. v. Trimble,* 301 F.3d 482, 489 (6th Cir. 2002). In doing so, "the court must draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Yet, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although a heightened fact pleading of specifics is not required, the plaintiff must bring

6

forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950.

Though decidedly generous, this standard of review does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

> [A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true.

*Twombly*, 550 U.S. at 555 (citations omitted). Further, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on different grounds by *Twombly*, 550 U.S. 544). In application, a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Lillard*, 76 F.3d at 726 (citation omitted). A court cannot grant a motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's factual allegations. *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

7

If a proposed amended complaint would not survive a motion to dismiss, the amendment is futile and the court should not grant the motion to amend. *Thiokol Corp. v. Dep't Of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 383 (6th Cir. 1993).

### B. Timely Objections and *De Novo* Review

The filing of timely objections requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review, in turn, requires this court to re-examine all the relevant evidence previously reviewed by the magistrate judge to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1). The court may "receive further evidence" if desired. *Id.*

A general objection, or one that merely restates the arguments previously presented, is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An "objection" that does nothing more than state a disagreement with a magistrate judge's suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used in this context. *Howard v. Sec'y of Health and Human Servs.,* 932 F.2d 505, 508 (6th Cir. 1991).

A party who files timely objections to a magistrate judge's report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court "with the opportunity to consider the specific contentions of the parties and to correct any errors immediately." *Walters*, 638 F.2d at 949-50. The Supreme Court upheld this rule in *Thomas v. Arn,* 474 U.S. 140, 148 (1985), noting that

"[t]he filing of objections to a magistrate's report enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Id.* at 147 (footnote omitted).

Furthermore, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

### III. DISCUSSION

Plaintiff makes six objections to the Magistrate Judge's R&R. After reviewing each objection and the Magistrate Judge's findings and recommendations de novo, the court will overrule Plaintiff's objections and adopt the R&R.

### A. Objection One

Plaintiff argues that the Magistrate Judge's "background facts misstate the actual facts, and [the Magistrate Judge] mischaracterizes the claims Plaintiff is actually making." (Pl.'s Objs. at 1.) Specifically, Plaintiff alleges that his complaint is not based on the enforcement of the *Cain* settlement agreement and that the Magistrate Judge misconstrues his U.P.S. shipping-related claim. (*Id.* at 2.)

The court has reviewed Plaintiff's complaint and finds that the Magistrate Judge accurately described Plaintiff's claims and the facts underlying these claims. Plaintiff's complaint, as detailed in the Background section *supra*, is predominantly based on the *Cain* settlement agreement and its subsequent enforcement. For instance, the relief sought by Plaintiff includes "the loss of a protected property interest being the

9

settlement's diminished value." (Pl.'s Second Am. Compl. ¶¶ 45, 95.) In addition, Plaintiff alleges that he "was stripped of a protected property interest in raising *Cain* violations before the Court," that Defendants blocked "Plaintiff's efforts to seek judicial review of the circumvention of the settlement agreements," that Defendants settled the *Cain* case in exchange for a bribe, and that his transfer to a lower security prison was a violation of the settlement agreement. (*Id.* ¶¶ 20, 27-28, 89, 95; *see also* R&R at 13.)

With respect to Plaintiff's U.P.S. shipping-related claim, the Magistrate Judge summarized the complaint as follows:

> Paragraphs 54-82 are new and describe a process in 1998 where the Cain court allowed the MDOC to implement a new property policy. Under the new policy, prisoners had to send out property that was not allowed. To insure delivery, the court required the MDOC to ship via UPS. In this case, plaintiff asserts that UPS delivered his property to the wrong address and that he sued UPS and lost. He now claims that defendants Girard and PLSM are liable for the loss.

(R&R at 5-6.) Having reviewed paragraphs fifty four through eighty two of Plaintiff's complaint, the court agrees with the Magistrate Judge's summary.

In addition to agreeing with the Magistrate Judge's summary of these events, the court finds that Plaintiff's claim against Defendants based on the U.P.S. shipping rules is frivolous. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) ("[A] district court may, at any time, dismiss *sua sponte* a complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion."). Any complaint with respect to the alleged improper U.P.S. delivery was properly directed against U.P.S., and Plaintiff brought this claim in small claims court and lost. He attempts to blame the MDOC for not disclosing all of the

U.P.S. rules prior to Plaintiff's property being shipped, and then hold Defendants liable as well. He alleges that "PLSM allowed MDOC to enter Plaintiff into a binding contract with U.P.S. without his knowledge or consent, and then caused Plaintiff to waive his right to appeal by filing a small claims case only to find out that PLSM contributed to the loss of $1700 worth of property, and the inability to recover from U.P.S." (Pl.'s Second Am. Compl. ¶ 69.) This claim is devoid of merit. Accordingly, the court will overrule Plaintiff's objection.

### B. Objection Two

In his second objection, Plaintiff argues that the *Rooker-Feldman* doctrine does not bar this court from exercising jurisdiction over his case, and instead *Lewis v. Casey*, 518 U.S. 343 (1995), "applies because Plaintiff challenges third-party conduct, and not the settlement agreement." (Pl.'s Objs. at 3.)

The *Rooker-Feldman* doctrine originated in two Supreme Court cases, *Rooker-Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983). The doctrine holds that lower federal courts do not have jurisdiction to review challenges to state court decisions, because such reviews may only be had in the Supreme Court pursuant to 28 U.S.C. § 1257. *Tropf v. Fidelity Nat. Title Ins. Co.*, 289 F.3d 929, 936 (6th Cir. 2002).

The Supreme Court reaffirmed and clarified the doctrine in *Exxon Mobil Corporation v. Saudi Basic Indus. Corp.*, 540 U.S. 280 (2005), holding that the doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 540 U.S. at 284. The Supreme

11

Court, however, also stated that even if "a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party,'" jurisdiction still exists. *Id.* at 293 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

"In the wake of *Exxon*, [the Sixth Circuit] has tightened the scope of *Rooker-Feldman*." *Pittman v. Cuyahoga County Dep't of Children and Family Servs.*, 241 F. App'x 285, 287 (6th Cir. 2007) (citing *Coles v. Granville*, 448 F.3d 853, 857 (6th Cir. 2006) ("*Rooker-Feldman* is a doctrine with only limited application.")). The Sixth Circuit has interpreted *Exxon*'s "limitation to mean that the *Rooker-Feldman* doctrine applies only when a plaintiff complains of injury from the state-court judgment itself." *Carter v. Burns*, 524 F.3d 796, 798 (6th Cir. 2008). "The pertinent inquiry after *Exxon* is the 'source of the injury' the plaintiff alleges in the federal complaint." *In re Smith*, No. 07-1220, 2009 WL 3049292, at *3 (6th Cir. Sept. 24, 2009) (citing *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006)).

> If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of the injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*McCormick*, F.3d at 393.

The court concludes that this case does not fall within "the narrow ground occupied by *Rooker-Feldman*." *Exxon Mobil*, 540 U.S. at 284. Although Plaintiff's claims are premised on the *Cain* settlement agreements, the alleged source of Plaintiff's injuries derive from the actions of third parties, i.e., Defendants allegedly preventing Plaintiff from raising his claims that the MDOC was violating the *Cain* settlement

agreements. *See McCormick*, F.3d at 393. Plaintiff's complaint does not invite the district court to review and reject the state court judgment. *Exxon Mobil*, 540 U.S. at 284. Moreover, the "*Rooker-Feldman* doctrine could not apply to parties that were not present in the state-court litigation." *Pieper v. Am. Arbitration Ass'n, Inc.*, 336 F.3d 458, 463 n.4 (6th Cir. 2003) (citing *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995)). Defendants were involved in the *Cain* litigation in a representative capacity, but were not present as parties.

However, even though the *Rooker-Feldman* doctrine does not apply, the court finds that Plaintiff's claims based on *Lewis v. Casey* fail to state a claim upon which relief can be granted. In order to establish a denial of access to courts claim under *Lewis v. Casey*, a Plaintiff must "show an actual injury to a non-frivolous legal proceeding arising from the defendants' alleged conduct." *Colvin v. Schaublin*, 113 F. App'x 655, 657 (6th Cir. 2004) (citing *Lewis*, 518 U.S. at 351). The "underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "[T]he complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.*

Here, the underlying causes of action, which Plaintiff alleges have been lost by Defendant's actions, are frivolous and do not identify a remedy that could be awarded as recompense. *See id.*; *Lewis*, 518 U.S. at 353 n.3 ("Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions."). As stated above, the court finds that

Plaintiff's claim based on the U.P.S. shipping rules is frivolous. In addition, Plaintiff was not denied access to the courts because he had an opportunity to litigate this claim in small claims court. With respect to Plaintiff's "transfer" claim, Plaintiff's transfer to a *lower*-level security prison cannot be construed as an adverse action, and Plaintiff identifies no portion of the *Cain* settlement agreement that entitles him to remain in a maximum security prison throughout his term of imprisonment.[3] Regarding his claim that Defendants ignored his complaint that was in the envelope opened by Gerth, Plaintiff merely alleges the complaint "dealt with many *Cain* issues and MDOC['s] failure to comply with Court orders." (Pl.'s Second Am. Compl. ¶ 108.) This bald assertion does not "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued." *Christopher*, 536 U.S. at 417.

Plaintiff contends that "Defendants did have a duty to litigate his complaints regardless of the outcome" (R&R at 2); however, Plaintiff is incorrect. Defendants, as officers of the court, had a professional obligation to not pursue frivolous matters. As the Supreme Court stated in *Polk Co. v. Dodson*, 454 U.S. 312 (1981),

> Although a defense attorney has a duty to advance all colorable claims and defenses, the canons of professional ethics impose limits on permissible advocacy. It is the obligation of any lawyer-whether privately retained or publicly appointed-not to clog the courts with frivolous motions or appeals. [Plaintiff] has no legitimate complaint that his lawyer refused to do so.

---

[3]As the Magistrate Judge stated, some of Plaintiff's theories have previously been determined to be without merit in *Coleman v. Granholm*, No. 06-12485, 2008 WL 919642 (E.D. Mich. Apr. 2, 2008) (Duggan, J.), where "Plaintiff Percival argue[d] that he was stripped of the protections provided in the '*Cain*' settlement agreement when the MDOC abolished 'level vi' and placed him in administrative segregation." 2008 WL 919642, at *4.

454 U.S. at 323. Plaintiff fails to allege a nonfrivolous cause of action in which he was denied access to the courts. Accordingly, the court will overrule Plaintiff's objection.

## C. Objection Three

In the first section of Plaintiff's third objection, Plaintiff reiterates his *Rooker-Feldman* argument discussed above. Plaintiff then objects to the Magistrate Judge's determination that Plaintiff's claims are virtually all "repackaged and thinly disguised claims that defendants breached or conspired to breach the *Cain* settlement agreement" and that "a § 1983 claim is not the proper remedy to enforce a settlement agreement." (R&R at 12.) Plaintiff contends that he only seeks damages, and "[w]hile a § 1983 [claim] may be improper to 'enforce' a settlement agreement for injunctive relief obtained in a state case, it is indeed proper to award <u>damages</u> against third parties who violate property interests obtained thereby." (Pl.'s Objs. at 6 (emphasis in original).)

The court agrees with the Magistrate Judge that virtually all of Plaintiff's claims are "repackaged and thinly disguised claims that defendants breached or conspired to breach the *Cain* settlement agreement." (R&R at 12.) Plaintiff's objection further supports this conclusion, in which he admits that the "property interests" that were "violated" were obtained from the settlement agreement. (Pl.'s Objs. at 6.) Indeed, Plaintiff alleges that he suffered "the loss of a protected property interest being the settlement's diminished value." (Pl.'s Second Am. Compl. ¶ 45.) As a mere contract dispute does not give rise to a § 1983 action, *see, e.g.*, *Costello v. Fairfield*, 811 F.2d 782, 784 (2d Cir. 1987), the court will overrule Plaintiff's objection.

## D. Objection Four

Plaintiff objects to the Magistrate Judge's recommendation that Plaintiff's RICO claims (Counts I, VI, VIII, XI, and XII) fail to state a claim. (Pl.'s Objs. at 7.) The Magistrate Judge determined that "Plaintiff fails to allege any predicate acts in his proposed second amended complaint that pose a risk of continued criminal activity." (R&R at 16.) In his objections, Plaintiff contends that continuity is demonstrated by Defendants adopting "a custom not to raise any complaints which will delay proceedings or result in any more lengthy battles with the administration." (Pl.'s Objs. at 8 (citing the First and Second Amended Complaints) (alteration omitted).)

In order to prove a pattern of racketeering under RICO, "a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Nw. Bell Telephone Co.*, 492 U.S. 229, 239 (1989). "'Continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 240. Continuity over a closed period of time may demonstrated "by proving a series of related predicates extending over a substantial period of time." *Id.* A "single, fraudulent scheme" to accomplish a single objective does not "possess the requisite RICO continuity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 726 (6th Cir. 2006) (quoting *Vemco, Inc. V. Camardella*, 23 F.3d 129, 134-35 (6th Cir. 1994)).

The court agrees with the Magistrate Judge's conclusion that "all of plaintiff's allegations are lacking because all of the alleged predicate acts 'were keyed to [the defendants'] single objective of depriving [the plaintiff] of' his rights under the settlement agreement." (R&R at 16 (quoting *Moon*, 465 F.3d at 725).) Plaintiff's objection

16

supports this conclusion where he alleges a "custom" of Defendants suppressing his complaints. (Pl.'s Objs. at 8.) Moreover, the court finds that the facts alleged in Plaintiff's complaints and further set forth in his objections fail to adequately allege facts to establish predicate acts under RICO. Thus, the court will overrule Plaintiff's objection.

### E. Objection Five

In Plaintiff's fifth objection, he alleges that he sufficiently states a cause of action under § 1985, § 1986, and the First Amendment and he is entitled to summary judgment on these claims because Defendants failed to defend. Plaintiff, however, fails to identify specifically how the Magistrate Judge erred in addressing these claims. *See Zimmerman v. Cason*, No. 07-1133, 2009 WL 3878523, at *2 (6th Cir. Nov. 20, 2009) (requiring "specific objections to the magistrate's report"). As such, these objections do not provide the district court with the opportunity to "consider the specific contentions" of Plaintiff or "to correct any errors immediately." *Walters*, 638 F.2d at 951.

Moreover, the court agrees with the Magistrate Judge's analysis. The Magistrate Judge determined that Plaintiff's complaint fails to provide a sufficient factual basis that he was deprived of a constitutional right based on race or religious animus. (R&R 16-19.) Plaintiff merely states that he is black and a Muslim and that "Defendants justified suppressing his and over 400 other class members' claims, in part because 'the level vi subclass were a very small group of mostly radical Black Muslims who don't justify the expense." (Pl.'s Objs. at 14.) This conclusory, unattributed allegation is insufficient to allege a conspiracy based on racial or religious animus. The court therefore agrees with the Magistrate Judge's conclusion.

Plaintiff argues that even if he "cannot prove the race or class-based animus behind Defendants impeding Plaintiff's access to state court, claims 3, 4, and 9 each alternatively state First Amendment Access to Courts claims." (*Id.*) As discussed under Objection Two, the underlying causes of action that Defendants allegedly blocked are frivolous and inadequately pleaded. *Christopher*, 536 U.S. at 415. Thus, the court will overrule Plaintiff's objection.

### F. Objection Six

In Plaintiff's sixth objection, he objects to the Magistrate Judge's determination that Defendants were not state actors. (Pl.'s Objs. at 16.) The Magistrate Judge reasoned that "attorneys, even those appointed by the court, do not act under color of state law for purposes of claims asserted against them under 42 U.S.C. § 1983." (R&R at 19.) Plaintiff argues that "[p]eople and corporations who work in the prison or perform required services for prisoners act under color of state law even if they are private contractors and not State employees." (Pl.'s Objs. at 16 (citing cases where a physician under contract with the state, a chaplain, and a medical services provider were deemed state actors).)

"To state a claim under § 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In *Polk Co.*, the Supreme Court held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." 454 U.S. at 325. It reasoned that "a defense lawyer characteristically opposes the designated

18

representatives of the State" and "best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing 'the undivided interests of his client.'" *Id.* at 318-19. The Court stated this was an "essentially private function, traditionally filled by retained counsel, for which state office and authority are not needed." *Id.* at 319.

The court agrees with the Magistrate Judge that Defendants are not state actors. The role of Defendants in relation to the state is similar to the role of the public defender because both characteristically oppose the representatives of the state. *See id.* at 318-19. Indeed, Defendants represented the prisoners in the *Cain* litigation who were suing the state, and it is likely that most of the civil rights complaints filed by the attorneys at PLSM were against the state. The prisoners have no constitutional right to attorneys in civil cases, see *Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir. 1987), and the state was not obligated to provide one for the prisoners to file civil suits against it. Thus, Defendants were filling an "essentially private function" and cannot be deemed state actors for purposes of § 1983. *Polk Co.*, 454 U.S. at 319. To the extent that Plaintiff alleges a conspiracy between Defendants and state actors, the court agrees with the Magistrate Judge that Plaintiff's allegations of a conspiracy are inadequate. Therefore, the court will overrule Plaintiff's objection.

### III.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Plaintiff's objections [Dkt. # 188] are OVERRULED and the Magistrate Judge's November 18, 2009 report and recommendation [Dkt. # 184] is ADOPTED, WITH THE EXCEPTION OF SECTION III.B, AND INCORPORATED BY REFERENCE.

IT IS FURTHER ORDERED that Defendants' "Second Motion to Dismiss" [Dkt. # 173] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's "Motion for Order to File Second Amended Complaint" [Dkt # 175] is DENIED.

                                          s/Robert H. Cleland
                                          ROBERT H. CLELAND
                                          UNITED STATES DISTRICT JUDGE

Dated: February 26, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 26, 2010, by electronic and/or ordinary mail.

                                          s/Deborah J. Goltz
                                          DEBORAH J. GOLTZ
                                          Case Manager